**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LINDA KEIL,

        Plaintiff,

v.

Case No: 07-CV-11816

HON. MARIANNE O. BATTANI

LIFE INSURANCE COMPANY OF NORTH
AMERICA, CIGNA CORPORATION and
HENRY FORD HEALTH SYSTEM,

        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO AFFIRM ADMINISTRATOR'S DECISION AND FOR JUDGMENT ON THE COUNTER-CLAIM AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. No. 28) and Defendant Life Insurance Company of North America's Response Brief to (1) Affirm Administrator's Decision, (2) for Judgment on Counterclaim, and (2) Strike Evidence Outside the Administrative Record (Doc. No. 43). The Court has reviewed all the relevant pleadings and finds oral argument will not aid in the resolution of this motion. See E.D. Mich. LR 7.1(e)(2). For the reasons that follow, the Court **GRANTS** Defendants' motion and **DENIES** Plaintiff's motion.

**I. BACKGROUND AND FACTS**

Plaintiff Linda Kiel worked as a nurse anesthetist in the Henry Ford Health System for about 30 years. While working for Henry Ford Health System, Plaintiff was provided with health insurance, retirement benefits, and disability plans, both short and

long-term. Keil filed suit against Defendant, Life Insurance Company of North America ("LINA"), after it denied her long-term disability claim (LTD) under policy LK980015, alleging a violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1).

To be approved for disability benefits under the LTD policy, a claimant must provide "satisfactory proof' of disability, fulfill the elimination period, and be under the appropriate care of a physician. Admin. R. 00832. Under the policy, a person is considered disabled if he/she is unable to perform all the duties of his/her job and he/she is unable to earn at least 80 percent of his/her Indexed Earnings from working in the regular occupation. Id. After the payment of short-term disability benefits (STD), if treatment goes on longer than 24 months, an employee is eligible for LTD if he/she is still unable to perform the material duties of any occupation for which he/she is reasonably qualified and he/she is unable to earn at least 60 percent of his/her Indexed Earnings. Admin. R. 00833. In sum, under the terms of the policy, Defendant is required to pay disability benefits only if all the aforementioned conditions are met and if the claimant can provide satisfactory proof (at his/her own expense) of disability. Admin. R. 00859.

The medical records show that Plaintiff first had pains in her upper abdomen in 2004. She had a laparoscopic cholecytectomy, and an ultrasound revealed she had a fatty infiltration of the liver. Admin. R. 00785; 00811. Because of abdominal pain, Plaintiff's last day of work was April 25, 2005. Admin. R. 00822. On May 2, 2005, Plaintiff consulted with Dr. Vic Velanovich, a general surgeon. He suspected possible mesenteric panniculitis. Admin. R. 00785-86. The best treatment for mesenteric

2

panniculitis is steroids, although Dr. Velanovich did not start treatment because of the possibility Plaintiff's problems were due to lymphoma.

On May 3, 2005, Keil followed up with her primary care physician, Dr. William Keimig. Admin R. 00806-807. An ultrasound showed a fatty infiltration of the liver and several non-enlarged lymph nodes. Admin. R. 00806-07; 00810. Subsequent CT and PET scans ruled out lymphoma, and Dr. Keimig's diagnosed Plaintiff with mesenteric panniculitis on May 9, 2005. Admin. R. 00810-812. In the meantime, Plaintiff also visited Dr. Leisen, a rheumatologist, who felt there was a low probability mesenteric panniculitis. Admin. R. 00752; 00773; 00787.

Plaintiff returned to Dr. Keimig a month later, and although her abdominal pain was marginally better, she was deemed not well enough to return to work. Admin. R. 00753. On June 28, 2005, Defendant approved Plaintiff's STD claim effective May 6, 2005. Admin. R. 00792-793.

In August, 2005, Dr. Keimig reported to one of Plaintiff's disability providers that Plaintiff had not begun therapy for her condition. On August 22, 2005, Plaintiff followed up with Dr. Velanovich for the suspected mesenteric panniculitis. Admin. R. 00778. At this point, Dr. Velanovich referred Plaintiff to the University of Michigan for testing. Id. Plaintiff was being treated with 400 mg. of Motrin.

On September 25, 2008, Defendant sent a letter to Plaintiff informing her that her STD benefits had been extended through November 3, 2005, and that she may qualify for LTD benefits. Admin. R. 00769-770. Plaintiff subsequently filed for LTD benefits. See Admin. R. 00762-764.

3

An October 14, 2005, CT scan of Plaintiff's abdomen again showed haziness of mesenteric fat and several enlarged mesenteric nodes. Admin. R. 00719. LINA faxed Dr. Keimig a request for information on October 17, 2005, asking him to complete a Physical Abilities Assessment showing Plaintiff's level of functionality and supporting medical documentation. Admin. R. 00746-751. Dr. Keimig responded that he had forwarded the request to his medical records department. Admin. R. 00741. Because LINA did not receive a completed Physical Abilities Assessment, on October 27, 2005, LINA again faxed Dr. Keimig requesting completion of the form. Admin. R. 00732-729. Defendant attempted to clarify the restrictions recommended by Dr. Keimig on several occasions, but he never completed the paperwork sent in that regard. Admin. R. 00746-751.

On October 28, 2005, LINA's case manger reviewed Plaintiff's claim file and noted the lack of medical documentation regarding Plaintiffs functionality or restrictions and/or limitations from work. Admin. R. 00728-729. LINA informed Plaintiff it had not received requested additional information from Dr. Keimig. Admin. R. 00731. Plaintiff subsequently faxed LINA additional office notes and general information regarding mesenteric panniculitis. Admin. R. 00716-727. On November 4, 2005, the case manager completed a Claim Direction Staffing Form indicating that the file still lacked medical documentation supporting restrictions and/or limitations from Plaintiff's occupation. Admin. R. 00713-715. Moreover, the case manger attempted to speak with Dr. Keimig, and left messages with patient advocates; however, Dr. Keimig never responded. Admin. R. 00701-704.

4

On November 9, 2005, Defendant notified Plaintiff that it rejected her LTD claim. Admin. R. 00707-710. The letter explains that although testing confirmed the diagnosis, lab work, EGD and colonoscopy were all with normal limits. Plaintiff treated her abdominal pain with Motrin and Tylenol on an as needed basis. The Medical Director opined that the medical information did not support restrictions severe enough to prevent Plaintiff from working in her regular occupation. Admin. R. 00707-710. LINA concluded that Plaintiff did not meet the definition of Disability as stated in the policy. Although she was diagnosed with mesenteric panniculitis, no records regarding her physical limitations and responses regarding treatment existed. Admin. R. 00728-29. The denial was based on Defendant's conclusion that Plaintiff no longer met the definition because there was no information to support restrictions or limitations recommended by her treating physician.

On February 24, 2006, Plaintiff appealed the denial of her LTD benefits. Admin. R. 00387. She submitted medical records from Dr. Keimig, who maintained that Plaintiff in fact had mesenteric panniculitis, and that her symptoms remained the same. Admin. R. 00360. Dr. Keimig also observed that Plaintiff continued to complain of "fairly constant pain." Id. LINA still had not received any medical documentation as to Plaintiff's loss of functionality. Admin. R. 00691-699. Defendant informed Plaintiff once more that LTD benefits were denied, a decision Keil again appealed.

Thereafter, LINA received information from Unumprovident Corp., a company with which Plaintiff had an additional private disability policy. UNUM provided Defendant its file on Plaintiff, which included three days of video surveillance, which occurred in November 2005. Admin.R. 00670-683. During surveillance, Plaintiff drove

5

190 miles without stopping, went grocery shopping, reached overhead to pull a tailgate down, carried a rug into a carpet store, and carried plastic trash bags to the street. Id. UNUM also provided a copy of a December 15, 2005, letter sent to Dr. Keimig by Dr. Herbert M. Dean, a doctor, board certified in Hematology, Oncology, and Internal Medicine, who had reviewed Plaintiffs file and found her complaints inconsistent with the activities in which Plaintiff engaged while under surveillance. On December 15, 2005, UNUM sent Dr. Keimig a letter requesting a response to the conclusion that Plaintiffs claims were unfounded. Admin. R. 00443-446. Dr. Keimig responded with a letter on behalf of Plaintiff, stating that Plaintiffs claims were medically supported and that her symptoms are marginally better when she uses Motrin. Admin. R. 00354.

On March 5, 2006, during Plaintiff's office visit with Dr. Keimig, she complained of difficulty twisting her torso and doing household chores. Admin. R. 00352-353. Dr. Keimig decided it was still best for Plaintiff not to work and recommended that she continue to take Motrin. Id.

LINA then requested an extension of time to decide the appeal while it awaited findings from the University of Michigan. Admin. R. 00377. On March 31, 2006, Advantage 2000 Consultants informed Defendant that Plaintiff had been awarded Social Security Disability Insurance Benefits on March 28, 2006, and that the date disability was established was April 26, 2005. Admin. R. 00379-383.

Thereafter, Defendant sent Plaintiff a letter, dated April 18, 2006, apologizing for the delay and notifying the Plaintiff that a decision would be ready in 30 days following an independent peer review. Admin. R. 00333. The Peer Review Question Sheet contains no information regarding the award of SSDI benefits. Admin. R. 00332. On

April 26, 2006, Dr. Venkatachala Mohan, Board Certified in Gastroenterology and Internal Medicine, did an independent peer review and concluded that restrictions placed on Plaintiff by Dr. Keimig were not medically supported and that Plaintiff was reasonably able to do her job. Admin. R. 00328. His report did not include a reference to the award of benefits from the Social Security Administration. Id. On May 8, 2006, Defendant sent Plaintiff a letter informing her that it would uphold its decision to deny benefits. Defendant also informed her that she may request a review of the decision in writing and submit new documentation. Admin. R. 00324-326.

On July 17, 2006, Plaintiff requested the review in writing. Admin. R. 00323. LINA informed Plaintiff that new medical information relevant to the evaluation of restrictions and limitations was needed to move forward with the review. Admin. R. 00319. On October 26, 2006, Plaintiff sent Defendant a letter including medical documentation of her records from April 2005 to the present date. Admin. R. 00190. On November 26, 2006, Plaintiff sent further documentation of her recent doctor visits. This documentation included an appointment with Dr. Keimig, who assessed Plaintiff's condition and concluded it had not gotten any better and that his diagnosis of mesenteric panniculitis was accurate. Admin. R. 00167-81.

Additionally, Plaintiff added a report from Dr. Olds, who recommended a formal second opinion regarding diagnosis should be sought given Plaintiff's ongoing concern and symptoms. He noted that "given the stability of the symptoms, " no immediate therapy was recommended. Admin. R. 00176-177. Dr. Keimig, however, drafted a formal letter to Defendant informing it that the Keil, in fact, was not able to go back to work and that she should be receiving LTD benefits. Admin. R. 00196. On March 6,

7

2007, Defendant sent a letter to Plaintiff's attorney noting that Plaintiff's claim for LTO was denied once more under appeal based on the following:

1.) Results of physical examinations from April 27, 2005, through October 23, 2006.

2.) An October 26, 2006, letter from Dr. Keimig.

3.) The surveillance report showing Plaintiff doing the tasks she claimed she was unable to do because of pain.

Defendant's Medical Director opined that there was no medical evidence supporting functional loss or the restriction of work and that Plaintiff had now exhausted all administrative options. Admin. R. 00126-129.

## III. STANDARD OF REVIEW

The Sixth Circuit has held that resolving ERISA actions challenging a denial of benefits on motions for summary judgment is improper. Wilkins v Baptist Healthcare Sys.. Inc., 150 F.3d 609 (6th Cir. 1998). Rather, courts are "to conduct a 'de novo' or 'arbitrary and capricious review' based solely upon the administrative record and render 'findings of fact' and 'conclusions of law' accordingly." Id. at 618-19. In so doing, the district court is "confined to the record that was before the Plan Administrator. See Perry v. Simplicity Eng'g, 900 F.2d 963, 966 (6th Cir. 1990).

"In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed.2d 80 (1989), the Supreme Court stated that an administrator's decision to deny benefits is reviewed under a *de novo* standard unless the plan provides the administrator with 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Hoover v. Provident Life and Acc. Ins. Co., 290 F.3d

801, 807 (6th Cir. 2002). Because of the use of the disjunctive "or," if a plan provides an administrator with discretion to determine either eligibility for benefits, or discretion to construe the terms of the plan, then the administrator's decision will be reviewed under the arbitrary and capricious standard. In other words, as long as the plan grants the administrator discretion in either area, then the deferential standard will be employed.

A plan administrator's decision will be upheld under the deferential arbitrary and capricious standard if "it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Baker v. United Mine Workers of Am. Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991). Although the arbitrary and capricious standard is given deference by the court, it does not require the court to "merely rubber stamp the administrator's decision." Jones v. Metro. Life Ins. Co., 385 F.3d 654, 661 (6th Cir. 2004). The court must consider and review "the quality and quantity of the medical evidence and the opinions on both sides of the issue." McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 168 (6th Cir. 2003).

## IV. ANALYSIS

### A. Motion to Strike

As a preliminary matter, Defendant moves to strike those exhibits proffered by Keil that it did not consider during the administrative proceedings. Case law is clear, plaintiffs suing under ERISA are limited to the facts contained in the administrative record. Although Plaintiff argues that these documents consist of background medical information printed from the internet relating generally to Plaintiff's medical conditions, she also submitted an affidavit from herself and Dr. Keimig, a report from a medical consult, as well as some portions of the administrative record. The exhibits are not part

of the record. Accordingly, Defendant's request is granted, and the exhibits play no role in the Court's consideration of the merits of Plaintiffs claim.

**B. Denial of Benefits**

The parties do not dispute that the disability policy grants LINA discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to benefits. Accordingly, Defendant's decisions are reviewed under the highly deferential arbitrary and capricious standard. See Miller v. Metro. Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991). Here, the Court must uphold the plan administrator's decision regarding her eligibility for benefits if the decision is "rational in light of the plan's provisions." University Hosp. v. Emerson Elec. Co., 202 F.3d 839, 846 (6th Cir. 2000). Further, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989).

Nevertheless, when assessing the decision, courts must factor into the analysis the existence of a conflict of interest. In this case, the Court acknowledges that a conflict of interest exists because Defendant was required to determine Kiel's eligibility for LTD benefits, and also to pay those same benefits. Existing case law has found that this "dual function creates an apparent conflict of interest." Glenn v. Metlife, 461 F.3d 660, 666 (6th Cir. 2006). This Court weighs this conflict of interest as a "'facto[r] in determining whether there is an abuse of discretion'" on the part of Defendant. Firestone Tire & Rubber, 489 U.S. at 115. Here, the conflict is an insufficient basis to overcome the lack of medical evidence relating to functionality in the record--the underpinning of Defendant's decision.

The factors warranting consideration do not demonstrate the absence of a deliberate, principled reasoning process and whether LINA's decision to deny benefits was based on a file review. See e.g. Calvert v. Firstar Fin., Inc., 409 F.3d 286, 295 (6th Cir. 2005) (courts must assess the decision in light of a conflict between the treating physician and a file review by an independent physician); Glenn v. Met Life, 461 F.3d 660, 669 (6th Cir. 2006) (assessing the defendant's failure to consider the SSA's determination of disability). To succeed on her assertion that the administrative record supports her claim of disability, Plaintiff maintains that LINA's reliance on nonexamining physicians as a basis for refusing to qualify her for long-term disability benefits rather than her treating physician's opinion was arbitrary and capricious.

The Supreme Court has held that in deciding whether benefits are due under an ERISA plan, a plan administrator need not "accord special weight to the opinions of a claimant's physician." Black & Decker Disability Plan v. Nord, 538 U.S. 833, 834 (2003). Nor does a plan administrator have "a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Id. A plan administrator may not however, "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Id.

Certainly, Defendant's reliance on the reports of the physicians it hand-selected and paid, rather than the Plaintiff's personal physicians, is a factor which must be taken into consideration. Under these circumstances, "the potential for self-interested decision-making is evident." Calvert, 409 F.3d at 292 (citation omitted) ("As the plan administrator, [the defendant] had a clear incentive to contract with individuals who were inclined to find in its favor that [the plaintiff] was not entitled to continued LTD benefits.").

Here, Plaintiff has not pointed to any errors or inherent inconsistencies in Dr. Mohan's report. Plaintiff does complain that Dr. Mohan's opinion as to the lack of diagnosis contradicts LINA's earlier position that the diagnosis of mesenteric panniculitis was confirmed by a CT of the abdomen. She adds that his contention that the pain is mostly musculoskeletal in nature is unfounded. Finally, Dr. Mohan relied on the lack of progression. Plaintiff ignores the fact that LINA consistently noted the lack of clinical finding supporting impairment of functionality. A review of the file shows that Defendant presents sufficient evidence to support its decision. Here, its failure to credit Dr. Keimig's opinion arises out of the lack of objective clinical findings accompanying his conclusion. That fact distinguishes this case from the decision in Calvert, in which the Sixth Circuit found an insurer acted arbitrarily and capriciously when it cancelled the plaintiff's benefits after physicians, hired by the insurer, relied exclusively on a paper review without conducting a physical examination. Calvert, 409 F.3d at 295 (observing that "reliance on a file review does not, standing alone, require the conclusion [the defendant] acted improperly, [but] the failure to conduct a physical examination--especially where the right to do so is specifically reserved in the plan-may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination"). The Calvert Court held that the insurer's decision was arbitrary and capricious for several reasons, including that the physicians did not review the entire file, did not describe data in the record, and failed to address "head-on" the conclusions made by the beneficiary's physicians. Id. at 297.

In contrast, here the insurer-hired physician provided a reasoned basis for

terminating Plaintiff's benefits. LINA specifically asked for information regarding Plaintiff's "functional abilities" in correspondence, and Plaintiff repeatedly failed to submit objective evidence of her functional impairments. Moreover, the reports show that the insurer-hired physician reviewed all of Plaintiff's medical records and addressed the conclusions of Dr. Keimig. As a result, LINA's decision to deny benefits is reasoned.

In addition, LINA credited the surveillance report, which contradicted Keil's reports to her doctors, as did her minimal use of analgesics to control pain. Dr. Dean, an independent consulting internist, likewise was unable to determine any restrictions based on the information he reviewed. Admin. R. 00440-443. These factors underscore the importance of the repeated requests for documentation relative to functionality, restrictions, or limitations from work.

In light of the preceding analysis, the Court finds that Defendant did not act arbitrarily and capriciously and that Defendant's decision denying LTD benefits to Plaintiff must be affirmed.

**C. Overpayment**

Next, the Court considers whether LINA is entitled to recover an "overpayment" of short-term disability benefits in the amount of $2,073.65. According to the terms of the policy, "An employee for whom Disability Benefits are payable under this Policy may be eligible for benefits from Other Income Benefits. If so, [LINA] may reduce the Disability Benefits by the amount of such Other Income Benefits." Admin. R. 00860.

Social Security disability benefits are identified as other Income Benefits, id., and

LINA wrote to Plaintiff that the amount of benefits she received would be reduced by any social security disability income ("SSDI") benefits she might received. Admin. R. 00793. Plaintiff received both SSDI and short-term disability benefits contemporaneously. She does not dispute the fact or the amount. In sum, Plaintiff has not presented any evidence to refute Defendant's evidence of Plaintiff's obligation to repay this amount. Accordingly, LINA is entitled to a return of $2,073.65.

## V. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Response to Affirm Administrator's Decision, for Judgment on the Counterclaim, and [to] Strike Evidence Outside the Administrative Record is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED**.

s/Marianne O. Battani  
MARIANNE O. BATTANI  
UNITED STATES DISTRICT JUDGE

DATE: June 17, 2008

### CERTIFICATE OF SERVICE

Copies of this Opinion and Order were e-filed and/or mailed to counsel of record on this date.

s/Bernadette M. Thebolt  
Deputy Clerk